## Richmond

Johnnie Herbert Baldwin v. Commonwealth of Virginia.

June 11, 1962.

Record No. 5445.

Present, All the Justices.

*Morris H. Fine* (*Fine, Fine, Legum & Schwan*, on brief), for the plaintiff in error.

*D. Gardiner Tyler*, Assistant Attorney General (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

Carrico, J., delivered the opinion of the court.

Johnnie Herbert Baldwin was tried upon an indictment which

charged that he "unlawfully and feloniously did manufacture, possess, have under his control, sell, prescribe, administer, dispense and compound a narcotic drug, to-wit, opium." The trial judge, hearing the case without a jury, found Baldwin guilty of "possessing and having under his control a narcotic drug, to-wit, opium," and fixed his punishment at confinement in the penitentiary for a term of three years and a fine of $100.00. From this judgment we granted Baldwin a writ of error.

In his assignments of error Baldwin contends that the trial court was without jurisdiction to convict him and that the evidence was insufficient to support his conviction.

The evidence, which consists only of that presented by the Commonwealth, shows that at 7:50 p. m. on May 21, 1961, Baldwin entered Ramsey's Pharmacy at 5018 East Princess Anne Road in the city of Norfolk. He purchased from Ernest D. Jarvis, a clerk employed at the store, four bottles of terpin hydrate and codeine, each bottle containing four fluid ounces.

About ten minutes later Baldwin was arrested, at the Landsdale traffic circle, by a city detective who recovered the four bottles of terpin hydrate and codeine from him and who placed the charge upon which Baldwin was subsequently convicted.

A toxicologist, employed by the city, testified that he had analyzed the contents of the four bottles found in Baldwin's possession. He stated that each bottle contained four ounces of fluid, that there was one grain of codeine in each fluid ounce or a total of 16 grains of codeine in the four bottles. He further stated that codeine is a natural product of opium, and that the bottles had labels showing the analysis of the contents, which corresponded to his analysis.

In a written statement given to the police and introduced into evidence, Baldwin admitted that he used terpin hydrate and codeine as a narcotic drug; that when he was arrested he had in his possession the four bottles of terpin hydrate and codeine which he had purchased from Jarvis, described by Baldwin as the clerk on duty at Ramsey's Pharmacy; that the normal price was $1.00 per bottle but that he had paid $18.25 for the four bottles; that he had purchased terpin hydrate and codeine from Jarvis on a number of occasions previously; that he had never signed the exempt narcotic book at Ramsey's Pharmacy, although he had been required to sign such a book at every other place where he had made such a purchase; that he had been able to buy only one bottle of terpin hydrate and codeine at a time at other drug stores and that he knew that by law he was

not able to buy more than one bottle at a time in a given number of hours.

The gist of Baldwin's contention concerning the jurisdiction of the trial court is that it was not proven that the city of Norfolk is in the Commonwealth of Virginia. This contention is without merit. In the first place, the trial court could, and this court will, properly take judicial notice of the fact that the city of Norfolk is in this Commonwealth. In addition, when the toxicologist was called as a witness he was asked to state his occupation. He replied, "Toxicologist for the city of Norfolk, Commonwealth of Virginia." The location of the city of Norfolk within the Commonwealth of Virginia thus appeared by positive testimony.

Baldwin's attack on the sufficiency of the evidence is equally without merit.

Baldwin was indicted under the provisions of § 54-488 of the Code of Virginia 1950, as amended, which reads as follows:

"It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article."

Section 54-488 is a part of the Uniform Narcotic Drug Act, Code, Sections 54-487 to 54-519, inclusive, originally adopted by the General Assembly in 1934. Sections 54-492 to 54-498, inclusive, provide by whom and under what circumstances narcotic drugs may be legally sold, possessed, dispensed, administered and used.

Section 54-499 exempts from the act, as related to the case before us, the prescribing, administering, dispensing or selling at retail of any medicinal preparation that contains not more than one grain of codeine in one fluid ounce. Such exemption is subject to two qualifications, first, that such medicinal preparation shall not be prescribed, administered, dispensed or sold at retail to any one person, or for the use of any one person, if it is known or can by reasonable diligence be ascertained that such person will thereby be provided with more than five grains of codeine within 48 consecutive hours and, second, that such exempted drugs shall be sold or offered for sale only by a licensed pharmacist regularly employed in a registered pharmacy.

Sections 54-500 to 54-504, inclusive, provide for the maintenance of records relating to the handling of narcotic drugs by authorized persons.

Section 54-507 provides, as related to the case before us, that a person to whom or for whose use any narcotic drug has been prescribed, sold, or dispensed, by a person authorized by the act, may

lawfully possess it only in the container in which it was delivered to him by the person selling or dispensing such drug.

Baldwin argues that the sale to him of the terpin hydrate and codeine was legal, because of the exemption provided in § 54-499, and therefore his possession of it was legal. He also says that § 54-507 authorized his possession of the narcotic drug and exempted him from the proscriptions of § 54-488.

But the position taken by Baldwin completely overlooks the undisputed evidence that the sale by Jarvis was not a legal sale under the act, and therefore not exempt under the provisions of § 54-499, for the following reasons:

1. Jarvis was merely a clerk in the drug store, as Baldwin knew. He was not a licensed pharmacist, under the provisions of § 54-499.

2. The amount of codeine sold to Baldwin in the one sale far exceeded the maximum amount with which Baldwin could be provided within a 48 hour period, a fact which both Jarvis and Baldwin knew.

Jarvis and Baldwin entered into and completed the sale and purchase of the drug with guilty knowledge that the transaction was tainted with illegality. Jarvis did not record the sale, as the law required. Baldwin did not sign the exempt narcotics book, as he had been required to do in all other drug stores where he had made such purchases. The price paid by Baldwin was more than four times the proper amount, a fact which, standing alone, connotes a "bootleg" transaction.

Nor do the provisions of § 54-507 exempt Baldwin's possession from the prohibition contained in § 54-488. The legal possession contemplated by § 54-507 is conditioned upon the sale being made by a person authorized by the act to make such sale. As has been noted, Jarvis was not so authorized.

Section 54-514 of the act placed upon Baldwin the burden of showing that his possession of the narcotic drug came under one of the "exceptions, excuses, provisos or exemptions" of the act. Baldwin has not carried that burden. To the contrary, the evidence shows clearly that his possession was illegal and squarely prohibited by § 54-488.

An examination of the Uniform Narcotic Drug Act makes it clear that possession of certain of such drugs, when acquired in the manner and from the persons authorized by the act, would be legal. But it is equally clear that it was intended by the legislature that possession would be illegal if the drugs be acquired in a manner other than

provided in the act, even though such possession may be for the personal use or consumption of the person in whose possession the drugs are found.

It must be kept in mind that the purpose of the act is to correct an evil—the illegal traffic in narcotics. Possession of narcotic drugs is an elementary and necessary ingredient of such traffic. The evil cannot be corrected if possession, acquired in flagrant violation of the act and completely unrelated to medical treatment, is condoned. Any other course would ignore and nullify the plain and obvious intent of the legislature, expressed in the act.

While we have not previously passed upon the precise question presented by this appeal, the courts of several of our sister states and certain of the federal courts, in dealing with similar questions under similar statutes, have reached the conclusion that unauthorized possession of narcotic drugs is prohibited under such statutes. *State v. Martin*, 193 La. 1036, 192 So. 694, 696; *State v. Reed*, 34 N. J. 554, 170 A. 2d 419, 421, 422; *Tomlin v. State*, (Tex. Cr. App., 1960), 338 S. W. 2d 735, 737; *Peachie v. State*, 203 Md. 239, 100 A. 2d 1, 2; *United States v. Garnes*, 258 F. 2d 530, 533; Comment, "Narcotics Regulations," 62 Yale L. J. 751, 770.

We are of the opinion that the judgment complained of is without error. Accordingly, it will be

*Affirmed.*