MERRITT *v.* STATE OF INDIANA.

[No. 30,500. Filed June 3, 1964.]

*John G. Bunner,* of Evansville, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Assistant Attorney General, for appellee.

ARTERBURN, J.—This is an appeal from a judgment of the Vanderburgh Circuit Court convicting the appellant of the offense of violating Section 17 of the Indiana Uniform Narcotic Drug Act, which provides that it shall be unlawful for any person to obtain or attempt to obtain a narcotic drug by fraud, deceit or the use of a false name. The appellant was charged as follows:

"FRANK M. FREIHAUT being duly sworn upon his oath says that JAMES MERRITT on or about the 7th day of JUNE A. D., 1962, at said County and State as affiant verily believes did then and there unlawfully, feloniously, knowingly and falsely

by the use of a false name and the giving of a false address which was in the following tenor, to-wit: Robert James, 511 Canal, obtain a certain narcotic drug, to-wit: one (1) two ounce bottle of paregoric, a compound containing opium.

"Then and there being contrary to the form of the Statute, in such cases made and provided, and against the peace and dignity of the State of Indiana."

A motion to quash the charge was filed, which contended that the court judicially knows that paregoric contains less than two grains of opium, which is exempt under the Indiana Act. [Burns' §10-3526 (1963 Supp.)]. The motion to quash was overruled, the appellant was tried and convicted, and the motion for a new trial was likewise overruled. The errors properly presented for review on this appeal are presented by the overruling of the motion for a new trial, which specified the overruling of the motion to quash, and that the verdict was contrary to law, the evidence was insufficient to sustain the same, and also specified the giving and the refusal to give certain instructions.

That part of the statute [Burns' §10-3535 (1956 Repl.)] under which the appellant was prosecuted reads as follows:

"10-3535. *Fraud or deceit.*—(1) No person shall obtain or attempt to obtain a *narcotic drug,* or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written order; or (c) by the concealment of a material fact; or (d) *by the use of a false name* or the giving of a false address.

. . . . .

"(7) The provisions of this section shall apply to all transactions relating to narcotic drugs under the provisions of *section eight [§10-3526] of*

*this act,* in the same way as they apply to transactions under all other sections." (Our italics)

The evidence is undisputed that the appellant went into the Deeg drug store in Evansville, Indiana on June 7, 1962 and purchased a two ounce bottle of paregoric for sixty cents. The law provides [Burns' §10-3527 (1956 Repl.)] that the druggist shall keep a record of all narcotic drugs sold and dispensed. Although it does not require that the record be signed by the purchaser, in this case this drug store kept a record to be so signed. The appellant signed the record, using the false name of Robert James. At the time of the purchase, Mrs. Gilbert, the clerk, informed Mr. Deeg, the druggist, of appellant's paregoric order, and Mr. Deeg gave the paregoric to the clerk, who delivered it to the appellant. Mr. Deeg knew the appellant and knew his correct name at the time he delivered the paregoric.

Section 8 of the Act [Acts of 1935, ch. 280, §8, p. 1351, as last amended by the Acts of 1961, ch. 90, §4, p. 169, being Burns' §10-3526 (1963 Supp.)] provides for certain qualified exemptions and the portions pertinent hereto read as follows:

"10-3526. *Preparations exempted.*—Except as otherwise in this act specifically provided, this act shall not apply to the following cases:

"(1) Prescribing, administering, dispensing, by or under the direction of a licensed physician, veterinarian, or dentist, or selling at retail by a licensed apothecary of any medicinal preparation that contains in one [1] fluid ounce, or if a solid or semisolid preparation, in one [1] avoirdupois ounce, (a) not more than two [2] grains of opium, (b) not more than one-quarter [1/4] of a grain of morphine or of any of its salts, (c) not more than one [1] grain of codeine or any of its salts, (d) not more than one-half [1/2] of a grain of extract of Cannabis; nor more than one-half [1/2] of a grain of any more potent derivative

or preparation of Cannabis; (e) not more than one-quarter [1/4] of a grain of isonipecaine or any of its salts; (f) and not more than one [1] of the drugs named above in clauses (a), (b), (c), (d), and (e).

"(2) Prescribing, administering, dispensing, by or under the direction of a licensed physician, veterinarian or dentist, or selling at retail by a licensed apothecary of liniments, ointments, and other preparations, that are susceptible of external use only and that contain narcotic drugs in such combinations as prevent their being readily extracted from such liniments, ointments, or preparations, except that this shall apply to all liniments, ointments, and other preparations, that contain coca leaves in any quantity or combination." (Our italics)

Viewing the Uniform Narcotic Act as a whole, it is obvious that it was the intent of the legislature that in certain instances it is not necessary to secure a physician's prescription to buy certain narcotic drugs with a minimum content of opium therein specified, and that paregoric containing less than two grains of opium was within that group and could be obtained without a prescription. However, it is also apparent that even though certain drugs containing a low percentage of a narcotic might be purchased without a physician's prescription, the law still required that a record be kept of the purchases and sales and to whom made.

"Narcotic drugs" [Burns' §10-3519 (1963 Supp.)], as defined in the act, reads as follows:

"(14) (a) 'Narcotic drugs' means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

"1. Opium, isonipecaine, coca leaves, cannabis and opiate;

"2. Any compound, manufacture, salt derivative, or preparation of opium, isonipecaine, coca leaves or opiate; and

"3. Any substance and any compound, manufacture, salt, derivative, or preparation thereof which is chemically identical with any of the substances referred to in paragraphs 1 and 2 immediately above.

"(b) The term 'narcotic drugs' shall also mean, but shall not be limited to, any drug which the Indiana board of pharmacy, after reasonable notice and opportunity for hearing, shall determine has an addiction-forming or addiction-sustaining quality similar to that of any narcotic drug as defined in subsection (a) of this section. In the rules and regulations adopted by the board under the provisions of chapter 120 of the Acts of 1945, as said act may hereafter be amended, the Indiana board of pharmacy shall issue a list of such narcotic drugs and proclaim them to be narcotic drugs as defined by this act. In the determination that any such drug is a narcotic drug, the pharmacy board may take into consideration the fact that such drug has been determined to be a narcotic drug by the federal narcotics law, as [or] has been determined to be a narcotic drug by 'Presidential Proclamation.'"

Under the section defining a "narcotic drug", paregoric containing two grains or less of opium is not excluded as a narcotic drug within the definition. Under Burns' §10-3535 (1956 Repl.), the obtaining of a "narcotic drug" by fraud, deceit, or "by the use of a false name" is covered as a violation of the act. This is made all the clearer when we look at paragraph 7 of that section, which states in substance that the provisions of this section shall apply "to all transactions relating to narcotic drugs" under the provisions of Section 8 (§10-3526) of this act, in

the same way as they apply to transactions under all other sections.

It is therefore apparent that the *exemptions* provided in Section 8 (§10-3526) of paregoric containing two grains or less of opium, is not an exemption applicable to the section on fraud and deceit, since it specifically excludes that exemption from its application to that section. In other words, a narcotic drug of a certain percentage or less may be exempt from part of the provisions of the Uniform Narcotic Act and not other provisions thereof. That, in our judgment, is the case here. The act does exempt paregoric containing two grains or less of opium from the provisions with reference to a physician's prescription, etc., but does not exempt the seller of such a drug from the requirement of keeping a record of the sales nor the buyer from the penal provision when obtaining the same by use of deceit, fraud or the use of a false name. This appears to be the construction given in other states where similar questions have arisen. *State* v. *Lee* (1963), 62 Wash. 2d 228, 382 P. 2d 491; *State* v. *Sanchez* (1962), 13 Utah 2d 307, 373 P. 2d 695.

It is next urged that there was no criminal law violation in this case because the druggist, Mr. Deeg, who actually sold the paregoric, did not rely upon the false name or address given when it was sold to the appellant, since he knew who the appellant was. However, the statute fixing the penalty upon exemption does not contain any requirement that there be reliance thereon by the seller except where fraud, deceit, misrepresentation, or subterfuge are charged in the obtaining of the drug. The prosecution in this case was not under the fraud and deceit portion of the act, but instead "by the use of a false name and the giving of a false address." This section of the statute

requires no reliance, but merely provides that the person "shall obtain or attempt to obtain a narcotic drug . . . by the use of a false name or the giving of a false address." The evidence is plain in this case that the appellant did "attempt" to obtain the paregoric by the use of a false name. Such act comes within the statute. *People* v. *Oviedo* (1951), 106 Cal. App. 2d 690, 235 P. 2d 612; *State* v. *Lee* (1963), 62 Wash. 2d 228, 382 P. 2d 491.

From reading the act as a whole, it would seem that the purpose of the act requiring the druggist to keep a record of the sales and to whom made is that an accurate record be kept in order to determine whether the exempt narcotics are being used by an addict or diverted to an unlawful use and false names and addresses being used for that purpose.

Appellant moved to withdraw the submission of the case from the jury on the ground that a police officer as a witness testified that appellant said that he was an addict. The trial court admonished the jury to disregard the statement and overruled the motion to withdraw the submission. We find no evidence of prejudicial error. The statement would ordinarily be admissible to show motive for the act charged. *Loveless* v. *State* (1960), 240 Ind. 534, 166 N. E. 2d 864; *Watts* v. *State* (1950), 229 Ind. 80, 95 N. E. 2d 570; *Warren* v. *State* (1941), 218 Ind. 378, 33 N. E. 2d 105; *Riley* v. *State* (1959), 168 Tex. Crim. 417, 328 S. W. 2d 306.

Appellant objected to the following portion of the court's preliminary instruction number 4, reading as follows:

"Any other interpretation of the law would weaken the safeguards erected by society for its

protection; for by the non-enforcement of the law and its penalties in all criminal cases where it is shown by the evidence, beyond a reasonable doubt, to have been violated, contempt for the law is bred among the very class that it is intended to restrain."

This same instruction was before this court in the case of *Beavers* v. *State* (1957), 236 Ind. 549, 141 N. E. 2d 118, and after a thorough review of the cases it was held that such instruction was proper "in all respects", as shown by previous decisions of this court.

The appellant further complains of certain tendered instructions which were refused. Such instructions supported the interpretation which the appellant has sought to give the Indiana Uniform Narcotic Act, and which interpretation we can not accept for the reasons previously stated. We therefore find that the court did not err in refusing to give such instructions.

The judgment of the trial court is affirmed.

Achor, C. J., and Landis, J., concur. Jackson, J., dissents with opinion, in which Myers, J., concurs.

### DISSENTING OPINION.

JACKSON, J.—I cannot agree with the majority opinion herein and dissent thereto for the reason that it is admitted that the appellant obtained paregoric from the Deeg Drug Store in Evansville, Indiana, under an assumed name which was known by the druggist to be false. From the record it appears that the proprietor, at the time of such sale, knew the appellant and knew his correct name, the circumstances of the sale were such that the element of entrapment is clearly apparent.

The applicable law, Acts 1961, ch. 90, §4, p. 169, being §10-3526, Burns' 1963 Cum. Supp., specifically

excluding the sale of the alleged contraband narcotic from the operation thereof and permitting its sale without the necessity of a prescription, in my opinion, placed upon the seller the burden of refusing to consummate the sale thereof to a person personally known to him, who for some reason gave a name other than his own at the time of the purchase of the drug.

In my opinion the court committed error in overruling the motion to quash and in overruling the motion for a new trial.

The cause should be reversed and remanded with instructions to sustain the motion for a new trial.

Myers, J., concurs.

NOTE.—Reported in 198 N. E. 2d 867.