# IN THE COURT OF APPEALS OF IOWA

No. 17-0116
Filed February 21, 2018

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**TIMOTHY DALE BROWNLEE,**
          Defendant-Appellant.
_____


          Appeal from the Iowa District Court for Lee (North) County, Mark E. Kruse,

Judge.


          A defendant challenges his convictions for assault with intent to commit

serious injury, first-degree arson, and possession of incendiary materials.

**AFFIRMED.**


          Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant

Appellate Defender, for appellant.

          Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


          Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

When Timothy Brownlee told his girlfriend that his "boss" expected him to "pay a heating bill," she took it to mean he was "supposed to light a fire" at the house occupied by the boss's nemesis. After hearing evidence Brownlee acted on that expectation, a jury convicted him of first-degree arson, possession of incendiary material, and assault with intent to commit serious injury. On appeal, Brownlee focuses on his girlfriend's accomplice testimony and contends trial counsel missed key opportunities to challenge the lack of corroboration. He also contends the jury should not have been allowed to hear about his prior bad acts through his recorded interview with police.

Because Brownlee's confession to being at the fire scene amply corroborated his girlfriend's testimony, he cannot show he was prejudiced by counsel's performance. As for the prior-bad-acts evidence, we find no abuse of discretion in the district court's ruling.

## I. Facts and Prior Proceedings

Around 5 a.m. on February 7, 2016, a newspaper carrier noticed a "bright glow" between two houses on his route. He called 911 to report a fire burning in a wheel barrow and going up the side of the house occupied by Amber Rae. Rae woke up to rescuers banging on her door and smoke filling her house. Rae's neighbor, Dan Miller, tried to fight the blaze with his garden hose—with limited success. Flames bounced around when sprayed with water, leading Miller to believe the fire was oil-based. The fire department used foam to fully extinguish the fire. The shift captain testified Miller's experience indicated the presence of an accelerant. Another fire investigator testified the fire's yellow color was consistent

with the use of an accelerant. The fire damaged the siding on both houses, but no one was hurt.

No charges were filed in connection with the fire until Tanisha Brownlee[1] came forward about seven weeks later. She asked the county attorney for immunity in exchange for her testimony regarding the source of the fire. Tanisha shared information that her boyfriend, Brownlee, performed "jobs" for a woman named Jeannie Breashears. Tanisha testified she accompanied Brownlee to rural Lee County where he received directions from Breashears to "pay a heating bill" at Rae's house. Tanisha understood the euphemism to mean set a fire. Tanisha testified Breashears previously told Brownlee that Rae was "messing with the wrong person." Rae testified she knew Breashears was "not a fan" of hers because Rae had a romantic relationship with Breashears's boyfriend.

Tanisha took a trip with Brownlee to Rae's house in January 2016. According to Tanisha, Brownlee carried "tennis balls with match heads in them" and paracord on the first trip to the house. Once there, Brownlee "put lighter fluid on the window sill and tried to light it. It lit for maybe a second and went out. It was too cold to keep a fire." In February 2016, Brownlee told Tanisha he was heading back to Rae's house to "finish paying the heating bill." On his second trip, Brownlee took a glass jar with a "goopy" pink substance "he indicated was napalm."[2] He also carried lighter fluid and tennis balls that were sliced to

---

[1] Tanisha was married to Brownlee's cousin but dated Brownlee at the time of the fire. We will use her first name in this opinion to avoid confusion.
[2] Tanisha recounted helping Brownlee by transferring the chemical from a metal can into the glass jar.

accommodate matchsticks, according to Tanisha's recollection. After the February fire, Tanisha did not see Brownlee "for at least a day or more."

After Tanisha gave her statement to authorities, Fort Madison Police Officer David Doyle interviewed Brownlee. Brownlee initially denied knowing Rae and said he had never been to her house. But as the interview progressed,[3] Brownlee admitted Breashears wanted him to go to Rae's house and "harass her." Brownlee told the officer he knew Breashears "unfortunately better than I'd like to" and had known her since she was a teenager. The officer introduced the idea that Breashears was "selling dope" and Brownlee acknowledged he owed her $300. He recalled driving out to rural Montrose to meet with Breashears because she was looking for somebody to "evict" Rae. Brownlee confessed to going to Rae's house on two separate occasions about two weeks apart. Brownlee denied setting fire to Rae's house, saying he only "flicked a lighter" to show Breashears, who he believed to be watching from a nearby street, that he was carrying out her orders. He told Doyle that "most of the flame was from the alcohol spray bottle" he spritzed into the air. At one point, he did acknowledge lighting a fire that resulted in the grass burning outside Rae's house. Midway through the interview, Brownlee told Officer Doyle: "If there's one thing I know, it's fire." Brownlee also said after the second trip, he "got out of town." Brownlee said Breashears sent him a message to thank him for taking care of the job, and he did not tell her otherwise.

---

[3] The prosecutor recalled during closing arguments, Brownlee seemed nervous and was "sweating bullets" during his conversation with Officer Doyle.

The State filed a trial information accusing Brownlee of two counts of attempt to commit murder, as class "B" felony, in violation of Iowa Code section 707.11 (2016) (counts I and II), two counts of arson in the first degree, a class "B" felony, in violation of sections 712.1(1) and 712.2 (counts III and IV), and two counts of possession of explosive or incendiary devices with intent to use them to commit a public offense, a class "C" felony, in violation of section 712.6(1) (counts V and VI). Counts I, III, and V related to acts alleged to have occurred in January 2016. Counts II, IV, and VI addressed the events of February 7, 2016.

Brownlee stood trial in November 2016. The jury acquitted Brownlee on counts I, III, and V, which related to the January events. On the second count of attempt to commit murder, the jury returned a guilty verdict on the lesser-included offense of assault with intent to commit serious injury, an aggravated misdemeanor assault, in violation of sections 708.1 and 708.2(1). The jury convicted Brownlee with arson in the first degree and possession of explosives as charged in counts IV and VI. The sentencing court imposed concurrent sentences on counts IV and VI and ordered the assault sentence to run consecutively, for a total prison sentence not to exceed twenty-seven years.

## II.    Scope and Standards of Review

We review Brownlee's claims of ineffective assistance of counsel de novo. *See State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017). We apply an abuse-of-discretion standard when deciding if the district court properly allowed into evidence portions of Brownlee interview with Officer Doyle. *See State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016). When reviewing for an abuse of discretion, we

give considerable leeway to the trial judge who is making a judgment call about the impact of the evidence at issue. *Id.*

### III. Analysis

### A. Corroboration of Accomplice—Ineffective Assistance of Counsel

To establish ineffective assistance, Brownlee must show (1) counsel failed to perform an essential duty and (2) the omission resulted in prejudice to Brownlee's case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the duty prong, Brownlee must show "counsel's representation fell below an objective standard of reasonableness" considering all the circumstances. *See id.* at 688. On the prejudice prong, Brownlee must show but for counsel's unprofessional errors, a reasonable probability exists the outcome of the proceeding would have been different. *See id.* at 694. Inability to satisfy either prong is fatal to Brownlee's claim. *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011). We often preserve ineffective-assistance claims for possible postconviction proceedings, but we will address them on direct appeal if the record allows. *Id.* The parties agree the present record is adequate to assess Brownlee's claims.

Brownlee alleges his trial counsel made two critical omissions: (1) failure to challenge the sufficiency of the State's evidence to corroborate Tanisha's testimony regarding his possession of incendiary material and (2) failure to request

a jury instruction on the necessity of corroborating accomplice testimony.[4] We will address each of these claims in turn.

### 1. Was Counsel Ineffective in Failing to Move for Judgment of Acquittal on Lack of Corroborating Evidence for Possession of Incendiary Material?

The jury found sufficient proof that on February 7, 2016, Brownlee possessed an incendiary device[5] with the intent to use it to commit a public offense. *See* Iowa Code § 712.6(1). On appeal, Brownlee claims "the only evidence that the jury could have found [he] possessed an incendiary or explosive device was provided by the testimony of an accomplice—Tanisha." Brownlee asserts that because Tanisha's testimony was not corroborated, that count would not have reached the jury had counsel raised the corroboration issue in his motion for judgment of acquittal.

"A conviction cannot be had upon the testimony of an accomplice . . . , unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Iowa Rule of Crim. P. 2.21(3). Corroborating evidence may be either direct or circumstantial; it need not be "strong" proof of guilt, so long as it backs a material aspect of the accomplice's testimony and tends to link the accused with the commission of the offense. *State v. Yeo*, 659 N.W.2d 544, 548 (Iowa 2003).

---

[4] Brownlee also alleges counsel was ineffective in failing to raise a relevancy objection to Brownlee's prior bad acts revealed during his police interview. We will address that allegation as we consider the preserved objections to the prior-bad-acts evidence.

[5] The jury instructions defined incendiary device as "a device, contrivance, or material causing or designed to cause destruction of property by fire."

The State concedes Tanisha could have been charged as an accomplice under an aiding-and-abetting theory of liability. But the State rebuffs Brownlee's assertion that he was prejudiced by counsel's failure to move for judgment of acquittal on the possession count by alleging inadequate corroboration. In the State's estimation: "Any such motion would have been flatly rejected by the district court." The State points to "independent testimony and evidence obtained from the scene" as corroboration for Tanisha's statements that Brownlee possessed and used incendiary material to light Rae's home on fire. Arson experts testified the color and behavior of the flames and the intense burn signaled the use of accelerants. The very location of the fire was suspicious, as one firefighter observed: "There was no reason for a fire to be at that location."

The State also highlights the corroborating nature of Brownlee's admissions to police. *State v. Douglas*, 675 N.W.2d 567, 572 (Iowa 2004) (reaffirming "the testimony of an accomplice and the confession of a defendant constitute acceptable corroboration, one for the other"). Officer Doyle testified Brownlee initially denied any connection to Rae or her residence. But when Doyle, falsely, suggested the police had video and a fingerprint linking Brownlee to the arson, Brownlee changed his story and acknowledged going to Rae's house on instructions from Breashears, but Brownlee unpersuasively denied liability for the fire. Brownlee admitted Breashears wanted Rae to "move out of town" and wanted him to "harass her." Brownlee volunteered the fact he visited Rae's home twice. He also volunteered that he carried a spray bottle with alcohol that created flames. Although Brownlee denied setting the fire, he stated after his second visit he left

town for "a while." That admission was consistent with Tanisha's statement she did not see him for a day or more.

On this record, we conclude Brownlee cannot show he was prejudiced by counsel's omission. As the State points out, Brownlee's brief "implicitly concedes" the prosecutor offered sufficient evidence to submit the arson count to the jury. It is hard to argue the prosecution generated a jury question as to whether Brownlee intentionally started an outdoor fire in early February with the aim of burning Rae's residence, but elicited insufficient evidence he used incendiary material to start that same fire. A motion for judgment of acquittal premised on the lack of corroboration for the possession of incendiary material offense would not have been successful given the State evidence supporting Tanisha's testimony.

## 2. Was Counsel Ineffective in Failing to Request A Jury Instruction on Necessity of Corroborating Accomplice Testimony?

Separate from his complaint about counsel's performance, Brownlee contends the district court had a duty, even without being asked, to instruct the jury about the need to corroborate Tanesha's testimony.[6] Brownlee relies on *State v. Anderson*, 38 N.W.2d 662, 665 (Iowa 1949), which states: "It is prejudicial error to fail to instruct even without request on the requirement of corroboration where the

---

[6] Brownlee quotes this uniform instruction:

An 'accomplice' is a person who knowingly and voluntarily cooperates or aids in the commission of a crime. A person cannot be convicted only by the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the crime. If you find (name of witness) is an accomplice, the defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such other evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

jury could find the only witness against defendant was an accomplice." Here, the jury could not have found the *only* witness against Brownlee was an accomplice. True, Tanisha was the main witness against Brownlee, but other witnesses also presented evidence incriminating him. Principal among those was Officer Doyle, who interviewed Brownlee and found his story shifted during the interrogation. Because Tanisha was not the sole witness to testify against Brownlee, the district court was not obliged to give the accomplice-testimony instruction in the absence of a request. *See State v. Moss*, No. 08-1224, 2009 WL 3381053, at *2–3 (Iowa Ct. App. Oct. 21, 2009). While the district court must instruct the jury fully and fairly, our adversarial system imposes the burden upon counsel to preserve error by specifically requesting pertinent instructions. *See State v. Sallis,* 262 N.W.2d 240, 248 (Iowa 1978).

Because counsel did not ask for the accomplice-testimony instruction, Brownlee alleges his representation fell below constitutional norms. We agree counsel should have asked the court to instruct the jury that Brownlee could not be convicted of any of the charges on Tanisha's word alone, but rather her accomplice testimony had to be corroborated by other evidence connecting Brownlee to the crimes. But we conclude Brownlee has failed to establish a reasonable probability exists that, had his attorney requested a corroboration instruction, the outcome of the trial would have been different. Given his own highly incriminating statements to Officer Doyle that jibe with Tanisha's testimony, it is more than likely the jury would have found adequate corroboration. *See State v. Barnes*, 791 N.W.2d 817, 825 (Iowa 2010).

Finally, we consider Brownlee's argument that he "was prejudiced by trial counsel's multiple errors on pivotal issues." "Under Iowa law, we should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). Because we find Brownlee's defense suffered no measure of harm stemming from any of counsel's alleged errors, we reject his cumulative prejudice argument. *See Schrier v. State*, 347 N.W.2d 657, 668 (Iowa 1984) (reviewing effect of various claims "both individually and cumulatively" and finding the appellant did not establish he was denied a fair trial).

## B. Was the Admission of Prior Bad Acts Cause for Reversal?

Brownlee contends the jury's verdicts were influenced by damaging information about his character from his recorded interview with Officer Doyle. He argues he is entitled to a new trial based on the admission of prior-bad-acts evidence.

During hearing on a motion in limine, the State confirmed its plan to play the video-recording of Brownlee's statement to Officer Doyle. Defense counsel expressed concern that the video revealed Brownlee's drug use and that he sold methamphetamine for Breashears. The State argued the video was relevant to show Brownlee's motive and intent to commit the crimes. The court overruled the defense request to exclude the evidence, stating: "It did appear that the State's theory of the case is that the fire was started to pay off a drug debt, the debt owed to Ms. Breashears. That relationship is relevant to motive, intent of the defendant in this case."

During trial, defense counsel renewed his objection to portions of the video being shown to the jury. Specifically, he cited Brownlee's references to (1) "being fronted an eight ball"; (2) doing "jobs" for Breashears; and (3) having a drug debt. The district court overruled the objections, finding the evidence was admissible to prove motive, lack of mistake, and the continuing relationship between Brownlee and Breashears. The court also ruled the probative value of the evidence was not outweighed by the danger of undue prejudice.

On appeal, Brownlee argues his trial attorney was ineffective for not raising a relevancy objection to the evidence that he used drugs, sold drugs, provided drugs to Tanisha, and spent time in jail in Illinois. He also argues the district court abused its discretion in allowing the jury to hear the entirety of his recorded interview with police.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b). But "[t]his evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. "[R]ule 5.404(b) is a rule of exclusion." *State v. Richards*, 879 N.W.2d 140, 153 (Iowa 2016).

"Courts employ a two-step analysis to determine whether the bad-acts evidence is admissible." *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004). The first step is to decide if the evidence is relevant to prove a legitimate factual issue in dispute. *Id.* If it is, the second step is to decide if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.; see also* Iowa R.

Evid. 5.403. If the probative value is outweighed by the danger of unfair prejudice, the court must exclude the evidence. *State v. Mitchell,* 633 N.W.2d 295, 298–99 (Iowa 2001). When a prosecutor offers evidence of uncharged misconduct to establish a defendant's intent, the district court must require the prosecutor to "articulate a tenable non-character theory of logical relevance." *Sullivan*, 679 N.W.2d at 28 (citation omitted).

Brownlee contends the fact he owed Breashears a drug debt or used illegal drugs himself was not admissible under rule 5.404(b). He asserts the information served no purpose but to portray him in a bad light. Brownlee continues, even if the drug evidence was "minimally relevant to a noncharacter theory," it should have been excluded because the risk that it could improperly influence the verdict was high. *See State v. Liggins,* 524 N.W.2d 181, 188–89 (Iowa 1994) (acknowledging juries who discover a defendant is a drug dealer may have an "instinct to punish drug dealers"). Brownlee also argues the evidence was not harmless. In cases of nonconstitutional error, reversal is required when it appears "the rights of the complaining party have been injuriously affected by the error or that [the party] has suffered a miscarriage of justice." *State v. Reynolds*, 765 N.W.2d 283, 292 (Iowa 2009) (quoting *State v. Henderson*, 696 N.W.2d 5, 12 (Iowa 2005)).

In response, the State argues Brownlee's involvement with the drug trade was relevant to its noncharacter theory that his motive was to satisfy his drug debt by doing the bidding of his drug supplier. We agree. Not all references to drugs are irrelevant for purposes of rule 5.404(b). *See State v. Crawley*, 633 N.W.2d 802, 808 (Iowa 2001) (upholding admission of defendant's drug use in a forgery case because it was relevant to his motive for cashing check). Here, Brownlee's

association with a "dope" dealer was not "wholly independent" of the crimes for which he was being tried. *See id.* His drug debt to Breashear and their ongoing relationship explained his incentive for committing the arson and associated crimes. Brownlee suggests the fact that the debt was for drugs was not relevant and the State could have advanced its theory by simply describing a general debt to Breashear. We disagree. It is unlikely a jury would be as ready to believe Brownlee would commit arson at the direction of someone to whom he owed just $300 without the explanatory backdrop of the drug trafficking.[7]

Having determined the drug debt was relevant to a legitimate factual issue in dispute, we turn to the second step in our analysis. We must decide if the probative value of the drug evidence was substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403. The State contends the mentions of Brownlee's drug use in the video played for the jury were "tangential and brief, vaguely referring to the substance as 'dope.'" We find it significant the drug references were not placed front and center by the prosecution. In his testimony, Officer Doyle does not discuss Brownlee's involvement with drugs, only stating that Brownlee "thought he owed between 300 and 350 dollars" to Breashears. The prosecutor did not mention drugs in his closing argument. Given their limited use, any undue prejudice from the casual references to Brownlee's drug debt in the police interview did not substantially outweigh their probative value.

---

[7] In fact, the defense made hay during closing argument by divorcing the amount of debt from the drug connection: "The State is making you believe that he had this $300.00 debt and, therefore, he was supposed to go kill Amber Rae for a debt of $300.00? Again, use your common sense."

Even if the drug-debt evidence was improperly admitted under rules 5.403 and 5.404(b), we find the record affirmatively establishes a lack of prejudice. A party may claim error in a ruling to admit evidence only if the error affects a substantial right of the party. *See* Iowa R. Evid. 5.103(a). "While a presumption of prejudice arises when the trial court has received inadmissible evidence over proper objection, that presumption will not suffice if the record demonstrates a lack of prejudice." *Shawhan v. Polk Cty.*, 420 N.W.2d 808, 810 (Iowa 1988). Here, the State presented compelling evidence of Brownlee's commission of arson, possession of incendiary material, and assault with intent to commit serious injury. Tanisha's testimony about his preparation for the crimes coupled with Brownlee's corroborating admissions—including his confession to being at the location of the fire—clinched his fate with the jury. We cannot say the veiled references to "dope" in the police interview affected Brownlee's substantial rights.

Nor can we say a different outcome would have been reasonably probable if trial counsel had objected to this drug-debt evidence on relevance grounds. In addition to the drug-debt evidence, Brownlee complains about Tanisha's testimony that "Tim and his friends" gave her marijuana and Xanax without a prescription and about Brownlee's statement that he served time in jail in Illinois. Brownlee cannot show prejudice from counsel's failure to object to these references. Defense counsel introduced the topic of Tanisha's drug use during cross examination, and the prosecutor asked on redirect where she was getting the marijuana and Xanax. Any objection to her response would not have been sustained. *See State v. Williams*, 171 N.W.2d 521, 529 (Iowa 1969) (holding defense opened door to inquiry on drug issue on cross examination, allowing State to ask additional

questions on redirect).  As for the jail reference, Brownlee said at the end of his interview that he "did [his] jail time in Illinois" and "quit selling dope."  While it would have been preferable for the State to edit out these comments, we cannot find the isolated references amounted to *Strickland* prejudice considering the strength of the State's case and the incriminating nature of Brownlee's entire interview. Accordingly, we reject Brownlee's third claim of ineffective assistance of counsel.

**AFFIRMED.**