UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry Robert WHITE, Defendant-
Appellant.

No. 15035.

United States Court of Appeals
Seventh Circuit.

Jan. 3, 1966.

Hastings, Chief Judge, dissented.

George P. McAndrews, Chicago, Ill., for appellant.

Kenneth P. Fedder, Asst. U. S. Atty., South Bend, Ind., Frank J. Violanti, Asst. U. S. Atty., Hammond, Ind., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KILEY, Circuit Judges.

KILEY, Circuit Judge.

White appeals from his conviction, by a jury, under eight counts of an indictment charging use of the mails in a

scheme to defraud.[1] We reverse and remand for error at the trial.

The substance of the charges is that between "about" January 7 and October 2, 1963, White, using the name Puccinni, intentionally devised the scheme of posing as a dealer in rare guns, books, sabers and cutlasses, advertising falsely in national magazines quoting prices and inviting bids for purchase of individual items of property, and inducing, through the mail, transactions with respect to those articles when he neither owned, possessed, nor had authority to sell any of the property.

There was sufficient testimony, taken most favorably for the Government, of the charges in the indictment to prove the charges *prima facie:* White, using the name Puccinni, renting a vacant store, to which address bids and correspondence were invited in the advertisements, and contracting for telephone and mail service; his use of the name Puccinni in making an application for membership in the National Rifle Association and in advertising various items for sale in national magazines at prices which were unusually low; his inducement to several persons in various states to respond to the ads with correspondence, checks and money orders, and his replies thereto; the name Puccinni on the vacant store; and his unlocking and entering the door to the store and picking up the mail addressed to Puccinni at the store.

■ White argues that the Government failed wholly to prove an essential element of the fraud charged, i. e., that White did not own or possess any of the property which he advertised for sale. It is true that there was no direct evidence that he did not possess the advertised property—no witness who sent an order to the defendant lost anything. Their checks were never cashed, and the postal authorities returned their mail to them, most of it unopened. We have held, however, that the essence of this offense, 18 U.S.C. § 1341, is the forma-

tion of a scheme with an intent to defraud, and use of the mails in furtherance of that scheme. United States v. Shavin, 287 F.2d 647, 649–650, 90 A.L.R. 2d 888 (7th Cir. 1961); see also United States v. Sylvanus, 192 F.2d 96, 105–106 (7th Cir. 1951), cert. denied, 342 U.S. 943, 72 S.Ct. 555, 96 L.Ed. 701 (1952.) Proof that someone has actually been defrauded, or that defendant did not own or possess the merchandise, is not essential to the statutory violation—though this proof, or lack thereof, weighs heavily in this case on the issue of whether or not there was a scheme formed with the requisite intent. Here the proof that was relevant to the alleged scheme was testimony of the unusually low prices for which guns were advertised, the impossibility of owning certain coins for which advertisement was sought, the vacant store, and use of the alias Puccinni. We find no error in the court's denial of defendant's motion for judgment of acquittal on this ground.

■ Nor do we see error in the court's denial of White's motion to suppress the mail, used in the Government's case, which White had picked up at the vacant store and turned over to government officials before accompanying them to the police station for questioning. There were questions of fact for the court in this ruling as to White's consent and voluntariness, which we cannot say were improperly decided.

■ A principal fact issue under the indictment was whether Puccinni, who used the mails, was defendant White. The latter insisted to police and postal authorities that he was not Puccinni, but rather Puccinni's agent in picking up the mail, that he did not know where Puccinni, who was a coin and gun collector, lived, and that he feared to identify Puccinni further. He denied using the mails under the name Puccinni.

If White did not write the N.R.A. application, which was sent in the mail, or the letters to the magazine publishers and to the "victims", then he could not

1. 18 U.S.C. § 1341.

be guilty. The record indicates that White was willing to stipulate at a crucial stage of the trial that he had typed and signed a letter on the same typewriter used to write other letters in evidence which bore the name Puccinni.[2]

It is with respect to this single letter [3] that we think the district court committed reversible error.

A California probation officer was permitted to testify, against defendant's argument that the jury should not, in the Government's case-in-chief, be apprised of his prior conviction of a crime. He testified to his vocation and to receipt by his office of a letter dated March 26, 1963, from a "Mr. Robert LeBlond" who identified himself as Robert White; and that White "was an individual who was in the case load that I was assigned at that time." The letter being thus identified by the witness, and objected to by White, the court reserved ruling on its admission; later, conscious of its prejudicial contents, the court admitted it into evidence "conditionally," to be sealed from the jury, and for its use in part by the Government's expert witness for comparison with parts of other typewritten and signed exhibits, i. e., a standard of comparison with the documents written by Puccinni to the publishers and the "victims."

The offense for which White had been convicted and granted probation (passing bad checks in California in 1960) was not "so blended or connected" with the mail fraud charge "that proof of one incidentally involves proof of the other or explains the circumstances thereof,"

so as to make admissible, as an exception to the general rule against evidence of other offenses in the Government's case-in-chief, testimony or documentation of this prior offense, compare United States v. McCartney, 264 F.2d 628, 631 (7th Cir.), cert. denied, 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83 (1959). The information given to the jury by the probation officer was transmitted indirectly though inadmissible directly.[4] Neither Swann v. United States, 195 F.2d 689, 691 (4th Cir. 1952), nor Lovely v. United States, 169 F.2d 386, 388–389 (4th Cir. 1948), justifies the admission of the testimony.

And the testimony was unnecessary to prove the Government's stated purpose, i. e., that this letter, written and signed by White as LeBlond, was written on the same typewriter used for the letters sent to the publishers and "victims." White was not willing to stipulate that he wrote the other documents under the name Puccinni, but he had been willing to stipulate that the same typewriter was used in writing the probation officer that was used for these other documents. And a postal inspector testified, as the Government knew he would, that White had admitted typing this letter—thus providing a basis upon which the typewriting expert's opinion could be based. The letter was originally admitted "conditionally," but when White later testified the condition was removed and the letter was in for all purposes.

White argues, with reason, that the effect of the probation officer's testimony was to invite speculation by the jury

2. Although the defendant subsequently withdrew "all offers to stipulate," it appears that the Government sought to gain something more than the above stipulation. Defendant had previously offered this stipulation several times, and even after his withdrawal of "all offers," the Assistant United States Attorney stated to the court that "it was admitted that this letter was written by the defendant."

3. The letter, to White's probation officer in California, stated that the probation officer in Cook County was waiting for

a decision by California probation officials concerning White's restitution for the crime he had committed.

4. Thus, even after the probation officer testified, the district court kept the contents of the letter from the jury until White took the stand, obviously mindful that White's "character, disposition and reputation," including his "prior trouble with the law," Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948), do not belong in the prosecution's case-in-chief.

upon the seriousness of the offense he had been convicted of and granted probation for; and that this effect, plus evidence of his bad character and of his refusal to "cooperate," all in the Government's case-in-chief, rendered it necessary for him to take the stand to explain, thus exposing himself to cross-examination about his past criminal record. The net result of giving the jury the fact of White's prior conviction and probation, his prior criminal record, and use of his letter, in "blownup" form, in argument to the jury, contributed on this record to prejudice him unjustly. We hold that the admission of the probation officer's testimony is reversible error.

In aid of a new trial, we point out that evidence introduced by the Government in its case-in-chief with respect to White's failure to cooperate, by giving handwriting specimens or helping the Government to find Puccinni, was not admissible to show his "attitude or frame of mind concerning his knowledge of the crime." White was under no duty to build the case against himself. The holding in United States v. Vita, 294 F. 2d 524, 527-529 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L. Ed.2d 788 (1962), is not to the contrary. The testimony on the facts of this case constituted an attempt to obtain an inference of guilt from his refusal to cooperate, "in violation of the spirit, if not the letter, of the Fifth Amendment." Helton v. United States, 221 F.2d 338, 341 (5th Cir. 1955).

We see no error in the instruction defining the offense and omitting· as an essential element thereof loss suffered by the "victims," United States v. Sylvanus, 192 F.2d 96 (7th Cir. 1951), cert. denied, 342 U.S. 943, 72 S.Ct. 555, 96 L.Ed. 701 (1952), and the reasons for White's challenges to the instructions concerning his "later efforts" to avoid detection and "declarations" bearing on his "state of mind or intent" will be removed on remand in the light of this decision.

The court commends Mr. George P. McAndrews, member of the Chicago Bar, for unselfish, dedicated service in accepting appointment as counsel for defendant on this appeal, and for his able presentation, both by briefs and on oral argument, of the issues involved.

Judgment reversed and cause remanded for further proceedings in accordance with this opinion.

HASTINGS, Chief Judge (dissenting).

I feel compelled to dissent from the result reached by the majority in this case. Under the circumstances present in this case, I do not believe that the admission into evidence of the letter written by defendant White was error, or, assuming it was error, that it was prejudicial to the extent requiring a reversal of this conviction.