**STATE of Iowa, Appellee,**

v.

**Stanley Carter LIGGINS, Appellant.**

**No. 93–556.**

Supreme Court of Iowa.

Nov. 23, 1994.

Rehearing Denied Dec. 20, 1994.

Kent Simmons, Davenport, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., William E. Davis, County Atty., and Joseph Grubisich, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

Stanley Carter Liggins was charged and convicted of murder first degree, willful injury, sexual abuse first degree, and kidnapping first degree. He was also charged with arson, but a judgment of acquittal was entered by the court on this charge at the close of the evidence offered by the prosecuting attorney. On appeal Liggins claims the Iowa court did not have jurisdiction to subject him to prosecution, the evidence was insufficient to support the convictions, and that the trial court erred in its pretrial rulings, in admitting evidence at trial over his objections, and in its instructions to the jury. We reverse and remand.

I. *Background.*

The deceased body of Jennifer Lewis was found on an elementary school lot in Davenport, Scott County, Iowa at approximately 9:00 p.m. on September 17, 1990. Her body had been burned. Upon further medical examination it was determined that death was caused by manual strangulation, that she had been sexually abused prior to her death, and that she was not alive at the time her body was burned. Jennifer, who lived with her mother Sherry Glenn and her stepfather Joseph Glenn in Rock Island, Illinois, had last been seen at approximately 6:30 p.m. purchasing gum at Mack's Liquor Store in Rock Island, Illinois. Jennifer's death occurred four days before her tenth birthday.

On July 27, 1992 a trial information was filed in Scott County, Iowa charging Liggins with the crimes surrounding Jennifer's death. Liggins entered not guilty pleas. On October 1, 1992 Liggins moved to set aside or dismiss the charges. Included in the motion was a challenge that the Iowa court did not

have criminal jurisdiction. He also filed a motion to suppress testimony regarding his interrogation, a search of his apartment and vehicle, and the testimony and evidence derived from identification procedures employed by the State. The court denied Liggins' motions.

The State filed a motion in limine prior to trial requesting the court determine the admissibility of certain evidence. *See* Iowa R.Evid. 104. The State proposed testimony that Liggins had committed prior uncharged criminal acts of sexual abuse of a child and of delivery of cocaine. *See* Iowa R.Evid. 404(b). Liggins urged the proposed evidence was not relevant and would be more prejudicial than probative. The court found the proposed evidence that Liggins supplied cocaine to Jennifer's mother and stepfather and to his former girlfriend, Brenda Adams, was admissible to prove a plan and identity. The court found the proposed evidence of sexual abuse of Adams' three-year-old daughter was not admissible.

Trial commenced on February 10, 1993. At the close of the evidence offered by the State, the court granted Liggins' motion for a judgment of acquittal as to the charge of arson in the first degree but denied the motion as to all other charges. The remaining charges were submitted to the jury and the jury returned guilty verdicts on all charges. Liggins' motion in arrest of judgment and for new trial was denied by the court and he was sentenced to three terms of life imprisonment and to a term not to exceed ten years on the willful injury conviction.

II. *Jurisdiction.*

■ Traditionally, at least under the common law, jurisdiction to subject an accused to criminal prosecution rests in the courts of the state in which the crime was committed. Charles E. Torcia, *Wharton's Criminal Law* 83–84 (15th ed. 1993). The theory of territorial jurisdiction is preserved to some degree by the United States and Iowa Constitutions. The Sixth Amendment of the United States Constitution provides the right to trial in "the state and district *wherein the crime shall have been committed.*" (Emphasis added.) Article V, section 6 of the Constitution of the State of Iowa provides the district court shall "have jurisdiction in civil and criminal matters *arising* in their respective districts...." (Emphasis added.) Iowa, by statute, provides that a criminal action "shall be tried in the county in which the crime is committed, except as otherwise provided by law." Iowa Code § 803.2(1) (1989).

The territorial principle of jurisdiction has been enlarged in a number of states by statute. Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 17, at 122–25 (1972). Criminal territorial jurisdiction in Iowa is expanded by Iowa Code section 803.1 which provides in part:

1. A person is subject to prosecution in this state for an offense which the person commits within or outside this state, by the person's own conduct or that of another for which the person is legally accountable, if:

   a. The offense is committed either wholly or partly within this state.

   b. Conduct of the person outside the state constitutes an attempt to commit an offense within this state.

   c. Conduct of the person outside the state constitutes a conspiracy to commit an offense within this state.

   d. Conduct of the person within this state constitutes an attempt, solicitation or conspiracy to commit an offense in another jurisdiction, which conduct is punishable under the laws of both this state and such other jurisdiction.

2. An offense may be committed partly within this state if conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this state. *If the body of a murder victim is found within the state, the death is presumed to have occurred within the state.*

(Emphasis added.)

■ We believe state territorial jurisdiction is an essential element of the crime. As such the issue is properly submitted at trial. Only if the jurisdictional facts are undisputed should the court determine the issue by pretrial order. *See, e.g., State v. Smith,* 421 N.W.2d 315, 321 (Minn.1988). The State is

required to prove territorial jurisdiction beyond a reasonable doubt.

Other states consider territorial jurisdiction an element of an offense that the state must prove beyond a reasonable doubt. *See, e.g., People v. Holt,* 91 Ill.2d 480, 492, 64 Ill.Dec. 550, 556, 440 N.E.2d 102, 108 (1982); *McKinney v. State,* 553 N.E.2d 860, 863 (Ind. App.3d Dis.1990); *State v. Martin,* 241 Kan. 732, 742, 740 P.2d 577, 584 (1987); *State v. Baldwin,* 305 A.2d 555, 559 (Me.1973). *See also* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.7(b) (1986); Annotation, *Necessity of Proving Venue or Territorial Jurisdiction of Criminal Offense Beyond Reasonable Doubt,* 67 A.L.R.3d 988 (1975).

■ In contrast, venue in Iowa is now a nonjurisdictional issue. *State v. Allen,* 293 N.W.2d 16, 18–19 (Iowa 1980). Venue deals with convenience and location of the trial rather than the power of the court to decide an issue on its merits. *State v. Wardenburg,* 261 Iowa 1395, 1400, 158 N.W.2d 147, 150 (1968). A defendant must secure a ruling by the trial court before trial or the venue issue is waived. *Allen,* 293 N.W.2d at 18. The State has the burden of proving venue by a preponderance of the evidence. *Id.* at 19–21.

■ Iowa Code section 803.1(2) creates a permissive, or rebuttable, presumption of state jurisdiction. In *State v. Winders,* 359 N.W.2d 417, 419 (Iowa 1984), we stated:

A permissive presumption is one that allows, but does not require, the jury to infer an elemental fact from proof of a basic one. Because the permissive presumption leaves the jury free to reject the inference, it does not affect the burden of proof, unless there is no rational way the jury can draw the inference.

(Citations omitted.) An instruction that permits a permissive presumption or inference does not violate due process under *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The interpretation of the instruction requires the court to determine "what a reasonable juror could have understood the charge as meaning." *Fran-*

*cis,* 471 U.S. at 316, 105 S.Ct. at 1972, 85 L.Ed.2d at 354.

■ The district court instructed the jury upon the statutory presumption. The court stated:

The law of the State of Iowa presumes that if a body is found within this state, the death occurred within the state. You are therefore allowed, but not required, to conclude that the death of Jennifer Lewis occurred within the State of Iowa.

The court also instructed the jury that the State must prove "the offense was committed wholly or partly within the State of Iowa" and that

[a]n offense is committed partly within the State of Iowa if conduct which is an element of the offense occurs within Iowa. An offense may also be committed partly within the State of Iowa if a result which constitutes an element of the offense occurs in Iowa.

In the marshalling instructions, the court required the State prove the offenses of willful injury, sexual abuse, and kidnapping were committed wholly or partly within the State of Iowa.

Liggins challenged the court's statutory presumption instruction. He requested the instruction use the word "infers" rather than "presumes" to explain the presumption. Although granting Liggins' request would have improved the instruction, we do not think a reasonable jury could have understood the court's instruction as creating a mandatory presumption that shifts the burden of persuasion to Liggins. In a homicide, if the body is discovered and it is not known where the death occurred, the rebuttable presumption or inference is necessary. It is rational to infer from proof of the location of the body that the homicide was committed within the state in which the body was found.

■ Although we conclude there was sufficient evidence to support a finding that Iowa had territorial jurisdiction to prosecute Liggins on the murder charge, we do not find sufficient evidence on this issue to prosecute him on the other charges. Jennifer, her mother and stepfather, and Liggins were residents of Illinois. Jennifer was last seen

in Illinois. There is no presumption or inference that the assault, sexual abuse, or kidnapping occurred in Iowa. The jury's finding that these offenses were committed wholly or partly within the State of Iowa is not supported by substantial evidence. The convictions on these charges must be reversed.

### III. *Sufficiency of Evidence.*

Liggins argues there is insufficient evidence in the record to support the jury's guilty verdict on the first-degree murder charge. Our standard of review is well established.

> A jury verdict is binding upon this court, and we must uphold the verdict unless the record lacks substantial evidence to support the charge. Substantial evidence is evidence which "would convince a rational trier of fact that the [defendant is] guilty of the crime charged beyond a reasonable doubt." The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive.

*State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993) (citations omitted).

> When reviewing the sufficiency of the evidence for a guilty verdict, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the evidence in the record. We must consider all of the evidence and not just the evidence supporting the verdict.

*Id.* (citations omitted).

Clearly there is undisputed evidence in the record that Jennifer died as a result of being strangled on September 17, 1990. There is substantial evidence that the perpetrator of the crime acted with malice aforethought and was either participating in a forcible felony or acted willfully, deliberately, premeditatedly, and with specific intent to kill. The focus of the trial was upon the identity of the perpetrator. As is often the case in criminal proceedings of this nature, there was no eyewitness testimony. The bulk of the evidence was circumstantial. Circumstantial evidence is not inferior evidence; both direct and circumstantial evidence are equally probative.

Iowa R.App.P. 14(f)(16). Before reviewing the sufficiency of the evidence we will consider if certain evidence admitted at trial should have been excluded.

### A. Custodial Interrogation.

■ Liggins claims he was illegally arrested and detained by law enforcement officers. The court denied Liggins' pretrial motion to suppress all statements made by him and all evidence seized as a result of searches conducted. The State has the burden of showing Liggins was not under arrest and that he had voluntarily consented to the searches and seizures. Because constitutional issues are raised, we review the record de novo in light of the totality of the circumstances. *State v. Taft,* 506 N.W.2d 757, 762 (Iowa 1993). Nevertheless, the court's findings on credibility of the witnesses are entitled to considerable deference. *State v. Evans,* 495 N.W.2d 760, 762 (Iowa 1993).

■ We, like the trial court, find Liggins was not arrested or placed in custody during his interrogation on September 19, 1990. He voluntarily accompanied law enforcement officers to the Davenport Police Department and he agreed to talk to the officers. He read, initialed and signed a *Miranda* rights sheet. He voluntarily consented in writing to the search of his apartment and motor vehicle. He voluntarily signed and consented to a search of his person and consented to participate in an identification line-up where his picture was taken. We conclude both testimonial and nontestimonial evidence provided by Liggins on September 19 was properly admitted at trial.

### B. Admissions.

■ In August of 1992, Frank Reising was arrested and placed in the Scott County Jail. He entered guilty pleas to two burglary charges and was sentenced on December 7. Reising shared a cell with Liggins in October, November and the first part of December. After sentencing he asked to talk to someone about Liggins. He was interviewed by the county attorney.

At trial Reising testified as to conversations he had with Liggins around the end of

November. Apparently Reising did not know about the murder charge against Liggins but saw on television that the Liggins case had been postponed. Reising testified that when talking about his case, Liggins

> was telling me about what they said he did and about the girl dying and how her body was set on fire and all this other stuff. ... I think it was during our second conversation, first or second conversation, that he just said, I did it and they ain't going to get me for it. They didn't have no evidence. Nobody to put him at the scene of the crime. Nobody seen him do it.

There was no evidence that Reising deliberately elicited the incriminating statements.

Liggins argues Reising's testimony was not corroborated and therefore it will not warrant a conviction. Under our procedural rules "[t]he confession of the defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the defendant committed the offense." Iowa R.Crim.P. 20(4). "The existence of corroborative evidence is a question of law for the court, but its sufficiency is ordinarily a question of fact for the jury." *State v. Vessey,* 241 N.W.2d 888, 890 (Iowa 1976). This rule "makes it necessary that the 'other proof' connect the defendant with the offense." *State v. Schomaker,* 303 N.W.2d 129, 130 (Iowa 1981). Corroboration need not be strong nor need it go to the whole of the case so long as it confirms some material fact connecting the defendant with the crime. *State v. White,* 319 N.W.2d 213, 214 (Iowa 1982). Although individual items of circumstantial evidence may be insufficient corroboration, the combination of the circumstances may permit a jury to conclude the confession or admission was corroborated. *See State v. Willman,* 244 N.W.2d 314, 315 (Iowa 1976). We find there is sufficient circumstantial evidence in the record to corroborate the admissions made by Liggins. The circumstantial evidence supports more than a finding of opportunity. *See Vessey,* 241 N.W.2d at 891.

C. Evidence.

■ A jury could find from the evidence in the record that Liggins was a frequent visitor to the Glenn residence in the summer of 1990. Jennifer knew him and the distinctive car that he drove. He was at the Glenn home on September 17 at approximately 6:00 p.m. when Jennifer left on her bike to visit friends in the neighborhood. Glenn left the residence and he was observed by a neighbor talking to Jennifer. Liggins returned to the Glenn home at approximately 6:30 p.m., a short time before Jennifer returned on her bike. After she returned, he gave Jennifer a dollar to go to the store to buy gum for him. Shortly after she left her home, Liggins left the house. He departed without saying anything to the Glenns about leaving or waiting for Jennifer to return with the gum he had asked her to get. A witness observed a black male, that he later identified as Liggins, near the corner of the liquor store at the time Jennifer was purchasing gum. No witness saw Jennifer alive after she left the liquor store.

Between 8:15 and 8:30 p.m. a witness observed a man standing by a car with the trunk and rear door open near Jefferson Elementary School in Davenport, Iowa. When shown a picture of Liggins' Peugeot, he said it was similar to the car he had seen that night. Another witness saw fire near the school at approximately 8:50 p.m. She saw a small foreign car that had a left taillight that was bright and the other taillight was "kind of dim." The rear part of the Peugeot vehicle was exhibited to the jury and the left taillight was brighter than the right.

Jennifer's body was burned with gasoline. There was a gas tank in Liggins' car that bore his fingerprints. The car, a 1983 Peugeot, had been purchased in April, 1990. Although most of the cash purchase price of $2300 had been provided by Liggins, the title was placed in Brenda Adams' name. Liggins was living part-time with Adams and they were romantically involved. Adams found it unusual that Liggins would ask her, a few hours after Jennifer's body was found, "if she would always love him no matter what." She observed an odor of gas in the Peugeot the day after Jennifer's death. This was a smell she had not observed before although she had frequently driven or ridden in the vehicle.

Liggins gave false statements and information to investigators. When questioned about stopping his car on the street and talking to Jennifer on the evening of her death, he vigorously denied this had occurred but later, when told he had been observed by other persons, he admitted it. He stated he left the Glenns' home to return to his motel apartment to call his sister. He said he had called twice and both times he talked to an answering machine. Other evidence presented at trial established the calls were not made. "A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993); *State v. Blair*, 347 N.W.2d 416, 422 (Iowa 1984) (defendant's inconsistent statements are probative circumstantial evidence from which the jury may infer guilt). In addition to the circumstantial evidence of Liggins' guilt, the jury could believe the testimony of Reising that Liggins admitted he had killed Jennifer. We conclude there is substantial evidence to overcome Liggins' motion for a judgment of acquittal on the murder charge.

IV. *Other Crimes Evidence.*

■ Over Liggins' objection, the court permitted the State to introduce evidence of other crimes. Sherry Glenn testified that at her first meeting with Liggins, in June or July of 1990, he solicited her to sell his cocaine. He would bring cocaine to her house and have her sell it. By selling his cocaine she was able to get money to get her husband out of jail. Her husband testified he first met Liggins after he got out of jail in August. Liggins was his cocaine supplier. Glenn would sell the cocaine and Liggins would then receive the money from the sale and would pay him a commission. Adams testified she first met Liggins in January of 1990 and at that first meeting he gave her cocaine.

In *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988), we stated:

In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. . . .

In the process of employing the two-step analysis, the trial court must exercise its discretion. We will reverse its decision only when we find a clear abuse of discretion.

(Citations omitted.)

The trial court found this evidence was relevant on the issues of identity and plan. The State in its argument urges the evidence is also relevant so that the jury would be permitted to view the entire circumstances surrounding the crime.

■ We find it was an abuse of discretion for the trial court to admit evidence that Liggins was a supplier of cocaine. This evidence was not relevant. The fact Liggins was a supplier of cocaine was not "an inseparable part of the whole deed." *State v. Walters*, 426 N.W.2d 136, 141 (Iowa 1988). When prior crimes evidence is offered to prove identity, "the test of relevancy is whether the prior crime and the crime for which defendant is being charged reveal circumstances that are 'strikingly similar' or of a 'unique nature,' such that involvement in the prior crime makes it more likely that defendant was involved in the present crime." *State v. Butler*, 415 N.W.2d 634, 636 (Iowa 1987). When prior evidence is offered to prove a plan, there must be proof of a similar crime by the same person and that there is some connection between the crimes. *State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971). Evidence of other offenses should never be admitted when the other offense is committed wholly independent of the one for which the defendant is on trial. *State v. Zuch*, 267 N.W.2d 52, 55 (Iowa 1978).

■ Error in admission of evidence must be prejudicial to an accused to constitute cause for reversal. *State v. Wallace*, 259 Iowa 765, 771, 145 N.W.2d 615, 619 (1966). The admission of evidence of cocaine delivery and distribution is inherently prejudicial. *See* 1 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 403[03], at 403–43–44 (1994). It appealed to the jury's instinct to

punish drug dealers. Evidence against Liggins was not so overwhelming as to cause us to ignore the ruling on the basis of harmless error. We therefore must reverse the conviction and remand for retrial on the first-degree murder charge.

### V. *Other Issues.*

Because only the murder charge is preserved for retrial, we need not address the merger issues raised on appeal. We do review two evidentiary rulings made by the court that may arise on retrial.

■ The trial court allowed three photographs of the victim's burned body. The photos were relevant as an inseparable part of the crime, as evidence of the state of mind of the perpetrator of the crime, and as evidence of an intent to conceal the crime. *See Walters,* 426 N.W.2d at 141; *State v. Nowlin,* 244 N.W.2d 591, 594–95 (Iowa 1976). The court did not abuse its discretion in allowing the photographs although gruesome in nature. *State v. Hickman,* 337 N.W.2d 512, 515–16 (Iowa 1983).

■ The trial court also allowed the rear portion of Liggins' car to be introduced as evidence. The vehicle was relevant as real evidence in the case and as demonstrative evidence of the car's lighting system. The court did not abuse its broad discretion in permitting demonstrative evidence to explain or illustrate the testimony of the witnesses. *State v. LaMar,* 260 Iowa 957, 963–64, 151 N.W.2d 496, 500 (1967); *Davis v. Walter,* 259 Iowa 837, 843, 146 N.W.2d 247, 250–51 (1966). Other issues raised on appeal involve matters not likely to recur on retrial.

**REVERSED AND REMANDED.**