STATE of Iowa, Appellee,

v.

Charles Lonell CRAWLEY, Appellant.

No. 99–1643.

Supreme Court of Iowa.

Sept. 6, 2001.

---

* Senior judge assigned by order pursuant to

Iowa Code section 602.9206 (2001).

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Cristen C. Odell, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and John Standafer, Assistant County Attorney, for appellee.

LARSON, Justice.

Charles Crawley was convicted of forgery and being an habitual offender, in violation of Iowa Code sections 715A.2 and 902.8 (1997), respectively. He claims error in the admission of certain evidence. We affirm.

On November 6, 1998, a Waterloo business was burglarized, and some of the business checks were taken. One of the checks was written without authorization, payable to Jon Gross, and cashed for $260. Gross, who became a state's witness, testified Crawley wrote the check out to Gross,

who cashed the check at a nearby grocery store. Gross gave Crawley all the cash except some that Gross used to buy groceries. When asked why Crawley gave him the check, Gross stated, "It was for to get drugs."

As part of its investigation, on March 25, 1999, the State obtained an order requiring Crawley to submit a handwriting exemplar. The State contended that Crawley failed to comply with this order by providing an accurate exemplar because he had disguised his handwriting. The State then requested a contempt order, and on April 8, the court found him in contempt. The court found the defendant "willfully and intentionally refused to comply with handwriting exemplar orders, and to subvert exemplar through feigned cooperation."

On May 6 the State filed a motion to adjudicate law points, requesting that evidence of Crawley's refusal to provide an accurate handwriting exemplar be admitted at trial. The court granted the State's motion, ruling that testimony of the lack of compliance with the court's order was admissible; however, evidence Crawley had been found in contempt for failing to provide the sample was not admissible. At trial two officers, including a handwriting expert, testified Crawley disguised his handwriting while preparing the exemplar.

Crawley was convicted of forgery in the first stage of a bifurcated trial, and in the second stage, he was found guilty of being an habitual criminal. On his appeal we address five issues: (1) the admission of evidence of his refusal to provide the exemplar, (2) the court's failure to adequately admonish the jury with respect to evidence of the contempt finding, (3) the admission of "bad acts" evidence involving "a rash of several burglaries," (4) the admission of "bad acts" evidence concerning drug use, and (5) the admission of Crawley's jail booking card into evidence. We reserve other issues for possible postconviction proceedings.

## I. Evidence of Defendant's Refusal to Provide Handwriting Exemplar.

■ At trial the State offered evidence of the defendant's failure to provide a handwriting exemplar, and pursuant to the court's pretrial ruling, the evidence was admitted at trial. In *State v. Longstreet*, 407 N.W.2d 591, 595 (Iowa 1987), we expressly reserved the issue of admitting evidence of a defendant's failure to provide a handwriting exemplar. We noted, however, that "[i]n most jurisdictions the trial court would allow the prosecution to comment on the defendant's refusal to produce exemplars as tending to suggest their guilt." *Longstreet*, 407 N.W.2d at 595.

The defendant relies on *United States v. White*, 355 F.2d 909, 912 (7th Cir.1966), to support his argument that evidence of his refusal to submit an exemplar was improperly admitted. *White*, however, is not persuasive. It does not address the issue in depth and, in fact, has not been followed in the circuit that decided it. In a subsequent case, *United States v. Jackson*, 886 F.2d 838, 845–46 (7th Cir.1989), the seventh circuit reached the opposite result with a more thorough analysis and without citation to *White*.

The *Jackson* court adopted the majority view, stating "[w]e believe the evidence of the defendant's refusal to furnish writing exemplars, like evidence of flight and concealment, is probative of consciousness of guilt, or in other words guilty knowledge." *Id.* at 846; *see also Wilson v. State*, 596 So.2d 775, 777 (Fla.Dist.Ct.App.1992) ("[R]efusal is considered circumstantial evidence of consciousness of guilt." (quoting Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 7.2(c) (1982))). Indeed, it has been noted that "[a]ll federal circuits passing on the question held or

opined that the refusal to submit a handwriting exemplar was admissible as evidence of consciousness of guilt" except for the seventh circuit, which "23 years [after *White* ] fell into line." H. Richard Uviller, *Self–Incrimination by Inference: Constitutional Restrictions on the Evidentiary Use of a Suspect's Refusal to Submit to a Search,* 81 J.Crim. L. & Criminology 37, 56 & n.64 (1990).

■ It is clear handwriting exemplars are different from statements privileged under the Fifth Amendment:

There is no doubt that requiring a defendant to give a handwriting specimen does not violate his fifth amendment privilege against self-incrimination since the privilege reaches only compulsion of a defendant's communication. *Gilbert v. California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). "A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection." *Id.* at 266–67, 87 S.Ct. at 1953 (citation omitted); *see also United States v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 776, 35 L.Ed.2d 99 (1973). Since handwriting exemplars are not testimonial or communicative matters but instead are an "identifying physical characteristic" of the person, *Gilbert,* 388 U.S. at 266–67, 87 S.Ct. at 1953; *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), evidence of, or comment on the defendant's refusal to comply with the lawful court order for the handwriting exemplars is distinguishable from evidence of, or commenting on the defendant's constitutional rights to refuse to testify at trial, or to post-arrest silence. *Jackson,* 886 F.2d at 845 n. 8; *see also United States v. Brown,* 156 F.3d 813, 815 (8th Cir.1998) ("[Defendant's] refusal to

give an exemplar was not privileged, and the jury could properly consider his refusal as evidence that the results of that testing would have been adverse."); *Wilson,* 596 So.2d at 777; *People v. Denard,* 148 A.D.2d 957, 539 N.Y.S.2d 195, 195 (1989).

■ It also appears there is no difference between a refusal to submit a handwriting exemplar and an attempt to disguise the handwriting in the exemplar; evidence of noncompliance is admissible in both instances.

"[I]t is not improper for the prosecution to show that the defendant attempted to avoid providing a valid handwriting sample by intentionally distorting his handwriting."

. . . .

Just as a defendant's refusal to provide a handwriting exemplar is admissible evidence of consciousness of guilt, so too is opinion evidence of a defendant's efforts to disguise his handwriting on an exemplar.

*People v. Tai,* 37 Cal.App.4th 990, 44 Cal. Rptr.2d 253, 257–58 (1995) (quoting *United States v. Stembridge,* 477 F.2d 874, 876 (5th Cir.1973)) (other citation omitted).

We hold this evidence was properly admitted.

## II. *Reference to Contempt Proceedings.*

■ The trial court had ruled the State would not be permitted to introduce evidence of the defendant being found in contempt. Crawley, however, contends that the following colloquy violated that ruling:

Q. So were you able to—does this wrap up your investigation of this case, Investigator Moller? A. No. There were hearings involved in regard[ ] to contempt of court hearings regarding. . . .

[DEFENSE COUNSEL]: Objection, your Honor. I don't believe that's a fit subject for this hearing.

THE COURT: Alright. Sustained. Disregard, ladies and gentlemen.

This comment only referred to contempt proceedings in general and made no reference to a finding of contempt regarding Crawley. In any event, any error was cured by the court's admonition to the jury to disregard the reference to contempt.

### III. Reference to "A Rash of Several Burglaries."

■ One of the officers testified there had been "a rash of several burglaries" to explain why he was conducting an investigation. The defendant claims this was "bad acts" evidence prohibited by Iowa Rule of Evidence 404(b). The colloquy was as follows:

Q. Did you investigate an incident which occurred at M.A. Moore & Associates and Overhead Door back in November of 1998, Investigator Moller? A. Yes, I did.

Q. And can you tell the ladies and gentlemen [of the jury] how you first got involved in that matter? A. I first became involved in the burglary to two businesses which occupy the residence or the address of the 800 block of Commercial and this would be M.A. Moore & Associates and also Overhead Door. They were broken into and nothing at that time of value appeared to be taken. This was on a Thursday, November the 5th. And it was a couple days after that that I was assigned to the case and the case progressed from there.

Q. Okay. And in the course of your initial investigation, did you discover anything at that time? A. Yes, I did. I might also mention that back in October and November of last year, we had a rash of several burglaries in the down-town area where a forced entry would be made sometime during the evening and there appeared to be nothing of value taken.

The State responds that the comment was merely background to explain investigator Moller's actions. See 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 401[05], at 401–29 (1994) [hereinafter Weinstein] ("Evidence that serves as background information about persons, subjects or things in a trial is generally admissible although it may not relate to a consequential fact."). It is clear this was the context in which the court admitted the testimony, as shown by its admonition to the jury:

I'll allow the witness to give a little more background as to why he was investigating this case, but I'd ask counsel to keep that limited and this is only for context, ladies and gentlemen of the jury. This is not for purposes of this prosecution other than to give a brief background.

The reference to other burglaries did not link the defendant to them, and in any event, the court's admonition adequately cured any error.

### IV. Introduction of Evidence of Prior Drug Use.

■ Jon Gross, who helped Crawley cash the check, testified Crawley used drugs and used the check proceeds to buy drugs. Crawley did not object at trial to this evidence, but he argues on appeal that this evidence was also "bad acts" evidence prohibited by rule 404(b). He contends his failure to object at trial is excused because of ineffective assistance of his trial counsel. After his conviction, Crawley was represented by a new attorney who raised the issue as a ground for a new trial. At the hearing on his motion, Crawley's new counsel examined Crawley's trial attorney

but made no record regarding any strategic reason for failing to object to the drug evidence. Nevertheless, even if we assume there was no strategic reason for this failure, we reject the argument because the court did not abuse its discretion in allowing the evidence.

In *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988), we said:

In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. . . .

In the process of employing the two-step analysis, the trial court must exercise its discretion. We will reverse its decision only when we find a clear abuse of discretion.

In *State v. Liggins*, 524 N.W.2d 181 (Iowa 1994), the district court admitted extensive evidence of the defendant's past drug dealing, although the charge against Liggins was murder. The State attempted to justify the drug evidence under Iowa Rule of Evidence 404(b) as going to the issues of identity and plan and also to show "the entire circumstances surrounding the crime." *Liggins*, 524 N.W.2d at 188. We rejected that argument, saying the evidence was both not relevant and inherently prejudicial; therefore, the court abused its discretion in admitting it. *Id.* Crawley relies on *Liggins* to support his argument.

*Liggins*, however, cannot be read so broadly as to hold that references to drugs in all circumstances is irrelevant for purposes of rule 404(b). Here, the testimony was that the motive for cashing the check was to obtain drugs, and credible authority supports the admissibility of such evidence under those circumstances. One authority states:

Evidence of other crimes has been admitted to show the likelihood of defendant having committed the charged crime for money, *particularly for money to buy drugs;* for sex; for goods to sell; because he was filled with hostility, sought to conceal a previous crime, or wanted to escape; because he intended to silence a potential witness, required assistance in a criminal scheme, or needed to protect himself in the commission of another crime.

Weinstein ¶ 404[14], at 404–86 to 404–90 (emphasis added) (footnotes omitted).

This proposition is not without controversy; recent cases are divided on the issue. *See United States v. Brooks*, 125 F.3d 484, 500 (7th Cir.1997) ("[T]he district court properly weighed the rule 404(b) factors" before admitting evidence that the defendants "used crack cocaine and that their desire to obtain more cocaine motivated this bank robbery."); *Adams v. State*, 272 Ga. 115, 527 S.E.2d 200, 202 (2000) ("[E]vidence that [the defendant] purchased crack cocaine after the armed robbery and murder of [the victim] . . . was relevant and admissible to show [the defendant's] motive in committing the crimes . . . [as a] reasonable fact finder can infer connection between armed robbery and purchase of cocaine because association between high cost of drugs and need for funds to purchase them is well recognized."); *Sykes v. Mississippi*, 749 So.2d 239, 244 (Miss.Ct.App.1999) (defendant's admission that he smoked crack cocaine prior to the burglary and entered building in search of money with which to purchase more crack cocaine admissible as material to prove motive); *State v. Barnett*, 141 N.C.App. 378, 540 S.E.2d 423, 431 (2000) ("[E]vidence elicited on cross-exami-

nation about defendant's drug use ... was admissible under Rule 404(b) because it permits the inference that defendant committed this robbery and murder to obtain money he needed to support his drug habit."); *Massey v. State*, 826 S.W.2d 655, 658 (Tex.Ct.App.1992) (evidence defendant discussed burglary, selling "hot" tires, and other ways to "come up with quick money" leads to fair inference defendant wanted to obtain money to buy additional intoxicants and was admissible to show defendant's motive for the robbery). *But see generally State v. Mazowski*, 337 N.J.Super. 275, 766 A.2d 1176 (2001) (citing numerous cases, including cases from California, Michigan, and Washington, that unfair prejudice completely overwhelmed the evidence's probative value as to motive).

In *Liggins* we said:

Evidence of other offenses should never be admitted when the other offense is committed *wholly independent of the one for which the defendant is on trial.*

524 N.W.2d at 188.

In the present case, the drug use was not "wholly independent" of the crime for which the defendant was being tried, as it was in *Liggins*. It was clearly relevant as to motive: The State's witness testified that the need to obtain money with which to buy drugs was the reason the forgery was undertaken. Even if defense counsel had objected, the court would not have abused its discretion in admitting it or in concluding its probative value was not "substantially outweighed by the danger of unfair prejudice" under Iowa Rule of Evidence 403.

### V. *Jail Booking Card.*

■ After securing Crawley's handwriting exemplar, officer Moller obtained Crawley's jail booking card for comparison purposes. This card was admitted as an exhibit, and the defendant claims the trial court abused its discretion in admitting it. He contended there was no evidence that Crawley signed the jail booking card.

We summarily reject that argument. The officer testified the defendant signed the booking form and identified the exhibit introduced at trial as a true and correct copy of the card.

### VI. *Other Issues.*

Crawley raises several other issues that, because of an inadequate record, we decline to resolve on appeal. The State concedes some issues should be preserved for possible postconviction proceedings, but it contends the record before us (as presented in the new-trial proceedings) is sufficient to consider, and reject, two ineffective-assistance-of-counsel issues: defense counsel's failure to retain a handwriting expert and ineffective assistance in questioning one of the State's witnesses.

We believe that all the following issues as to which Crawley claims ineffective assistance of counsel should be preserved for possible postconviction proceedings in order to consider them in their totality. These include (1) defense counsel's failure to retain a handwriting expert; (2) defense counsel's soliciting the handwriting opinion of officer Moller, notwithstanding Moller's admitted lack of expertise; (3) failing to object to Moller's testimony regarding other forgeries of checks from the same business; and (4) soliciting officer Moller's testimony regarding other suspects with whom Crawley was familiar.

### VII. *Conclusion.*

We find no error in the court's rulings on any of the issues considered in divisions I through V. All other issues are preserved for possible postconviction relief.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

* Senior Judge assigned by order pursuant to    Iowa Code section 602.9206 (2001).