**IN THE COURT OF APPEALS OF IOWA**

No. 15-1832
Filed October 26, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH WILLIAM RENDON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Defendant appeals his convictions for first-degree burglary and nine counts of first-degree robbery. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Thomas E. Bakke, Assistant Attorneys General, for appellee.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Joseph Rendon appeals his convictions for first-degree burglary and nine counts of first-degree robbery. We find Rendon has not preserved error on his claims the district court improperly permitted evidence he was involved in drug dealing and there was insufficient corroboration of the testimony of accomplices. The district court did not abuse its discretion in permitting an officer to testify as an expert on cell phone records, and Rendon has not shown he received ineffective assistance of counsel. We affirm his convictions.

**I.      Background Facts & Proceedings**

On September 24, 2014, Thomas Dean hosted an illegal high-stakes poker game in an outbuilding at his home on 86th Street in Johnston. Rendon had previously attended a poker tournament at Dean's home and knew there would be a large amount of cash at the game. At about 1:30 a.m. on September 25, four men—Garvis Thompson, Arthur Benson, Jacari Benson (Jacari), and David Moore—came into the outbuilding. Three of the men carried guns, and the fourth had a bag. The intruders took money and cell phones from the people participating in the poker game. The intruders made the poker players lay on the floor, and then ran out to their get-a-way vehicle, a Chevrolet Impala, driven by Benson's girlfriend, McKenzie McCracken.

One of the poker players, Justin Lisk, ran out, got into his pickup truck, and followed the Impala south on 86th Street. Lisk's cell phone had not been taken by the intruders and he called 911 to inform officers of the intruders'

location.[1] McCracken lost control of the Impala and it struck another vehicle. The occupants of the Impala abandoned it and fled on foot. Officers set up a perimeter in an attempt to capture the criminals. The only vehicle to come through the perimeter was a maroon SUV.

Officers found paperwork addressed to Moore in the Impala. Also, fingerprints from Thompson and Jacari were found on the door handles of the Impala and Thompson's DNA was found on a black ski mask. Officers picked up Thompson, Benson, Jacari, and Moore, and analyzed their cell phones. They found a pattern of calls between the men and with Rendon. The subscriber for Thompson's cell phone was Rendon. Video taken by a security camera on the corner of 86th Street and Meredith Avenue from the night in question showed the Impala, followed by Lisk's pickup, followed by a maroon SUV. On September 26, a maroon SUV, driven by Rendon, was stopped by State troopers and given a warning for speeding on eastbound Interstate 80.

Rendon was charged with burglary in the first degree and nine counts of robbery in the first degree. Prior to trial, the district court ruled "evidence [of drug dealing] could be admitted at least to some extent," in order to show the relationship between the parties. After jury selection, Rendon filed a motion in limine seeking to prohibit evidence of the specific types of drugs he sold. The court ruled the witnesses could only refer to generic "drugs," not specific types of drugs.

---

[1] During the poker game, Lisk placed his cell phone on a shelf in the outbuilding and it was not taken by the intruders. Lisk grabbed his cell phone as he ran out to follow the intruders.

Moore accepted a proffer agreement from the State and testified at Rendon's trial. Moore testified he was Thompson's cousin and often went to Thompson's apartment. Moore stated Rendon told him and Thompson about the poker games and how it would be easy to take the money. He stated Rendon had the idea for the robbery and Thompson planned the details. Moore testified Rendon brought over gloves for the group and zip ties to use on the poker players.[2] Moore stated Rendon dropped him off at Dean's home, and Rendon was to drive around to make sure no one else was in the vicinity.

Thompson also entered into a proffer agreement with the State. Thompson testified Rendon supplied him with drugs and Thompson distributed the drugs to Benson and Jacari, who helped sell the drugs. Thompson stated Rendon came to him with the idea of robbing a poker game, and they discussed the idea with Moore, Benson, and Jacari. Thompson testified Rendon was supposed to drive behind the Impala to make sure no one was following them after the robbery. Thompson stated they obtained $17,000 in the robbery and Rendon received $8000 of that amount. The day after the robbery, Rendon drove Thompson to the Quad Cities in a maroon SUV. Thompson testified he and Rendon planned to use the money obtained in the robbery to purchase more drugs, which they would then sell.

After Thompson's testimony, Rendon sought a mistrial, claiming there was more evidence about drug dealing than was anticipated and it led to undue

---

[2] Thompson also testified Rendon provided zip ties to use on the poker players. The intruders, Thompson, Benson, Jacari, and Moore, did not use the zip ties. Moore, who brought the zip ties to the robbery, testified he became too nervous and did not get them out.

prejudice. The court ruled, "I don't think at this point in time there's sufficient undue prejudice to grant a mistrial." The court again pointed out the evidence of drug dealing was admissible to show the relationship between the parties.

Jacari testified Thompson was his cousin. He testified he heard Rendon talking about the poker game that night. Jacari testified Rendon was driving a maroon SUV.

Detective Tyler Tompkins of the Johnston Police Department testified he had taken several classes on analyzing cell phones and cell phone records. Detective Tompkins testified the cell phone records showed Rendon, Thompson, Moore, and Jacari were often in contact with each other before the robbery and after the robbery. According to the records, the cell phone towers used for the calls were consistent with the testimony of Thompson, Moore, and Jacari about their activities on September 24 and 25, as well as Rendon and Thompson's drive to the Quad Cities on September 26.

The district court denied Rendon's motion for judgment of acquittal. The jury found Rendon guilty of first-degree burglary and nine counts of first-degree robbery. Rendon was sentenced to a total of seventy-five years in prison. He now appeals.

## II. Prior Bad Acts

**A.** Rendon claims the district court erred by permitting the State to present evidence he was involved in selling illegal drugs. Prior to the trial, the district court stated:

> So I think based upon the case law, I felt that to any extent the evidence with regard to drug dealing shows relationship or otherwise could be relevant to showing how this plan, if there's a

plan for this robbery to take place, that it could be relevant, and any relevance would outweigh any undue prejudice that might apply to the parties. So for that reason I made clear to the lawyers that that evidence would be admitted at least to some extent.

Counsel for codefendant Benson then stated there was limited evidence of a relationship between Benson and Rendon. The court stated:

> Well, I will still consider objections as they come up during the trial. As I mentioned, none of this was brought up in the form of motions in limine but brought up to advise the Court as far as what direction the evidence might go. I think it is helpful to have some parameters so that you know what rulings might come to be. But everything is going to be subject to objection. I don't want it to be an objection fest, but to the extent that we get outside these general parameters that I've set, then you'll be free to either object to certain evidence or make the arguments that you just made during the course of closing statements.

We conclude the district court did not make a final ruling on the admissibility on the evidence of drug dealing. "[I]f the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and may not be questioned again during trial." *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006). Here, the court stated it would consider objections made during the trial and "everything is going to be subject to objection." Because the court did not make a final ruling, an objection when the evidence was offered was required in order to preserve error. *See id.* Rendon did not object to the evidence and we conclude error has not been preserved.

**B.** After the first day of trial, Rendon filed a motion in limine seeking to prohibit the State from mentioning the types of drugs he sold. The district court granted this motion. The motion did not address the general subject of evidence of drug dealing, but was only about the specific types of drugs Rendon distributed. The ruling on the motion in limine does not preserve error on

Rendon's claim the district court improperly permitted evidence he was involved in the distribution of illegal drugs.

**C.** After Thompson testified, Rendon sought a mistrial, claiming during the direct examination of Thompson the prosecutor went "into far more [ ] depth," on the topic of drug dealing than he anticipated and he was concerned "undue prejudice ha[d] attached." The court noted defense counsel had objected to the prosecutor's question to Thompson, "After he dropped you off, what was the plan for the two of you after that?" and there was no objection to other questions on the topic of drug dealing. When defense counsel raised the objection, the State ceased this line of questioning, and the court concluded, "I don't think at this point in time there is sufficient undue prejudice to grant a mistrial."

We review a district court's ruling on a motion for mistrial for an abuse of discretion. *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). "A mistrial is appropriate when 'an impartial verdict cannot be reached' or the verdict 'would have to be reversed on appeal due to an obvious procedural error in the trial.'" *Id.* (citation omitted). The district court noted the question asked by the prosecutor was not necessarily a question about future drug dealing. The court stated, "Now, I don't know what the point of the question was, but I don't know that the question was directed toward drug dealing or toward something related to the robbery."

We find the prosecutor did not ask an improper question that was designed to elicit testimony concerning Rendon's prior bad acts. Rendon has not shown the prosecutor's conduct led to a situation where an impartial verdict could

not be reached. We determine the district court did not abuse its discretion in denying the motion for mistrial.

### III. Expert Testimony

Rendon claims the district court erred by overruling his objection to the testimony of Detective Tompkins on the ground he was not qualified to testify about cell phone records. Detective Tompkins testified he received his training from 2008 to 2012. Rendon claims Detective Tompkins had obsolete technical knowledge and should not have been permitted to testify as an expert in interpreting cell phone records.

We review the admissibility of expert testimony for an abuse of discretion. *State v. Hicks*, 791 N.W.2d 89, 98 (Iowa 2010). Iowa courts are "generally 'committed to a liberal view on the admissibility of expert testimony.'" *State v. Tyler*, 867 N.W.2d 136, 153 (Iowa 2015) (citation omitted). Under Iowa Rule of Evidence 5.702 expert opinion testimony is permitted "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." An expert's lack of absolute certainty goes to the weight of the expert's testimony, not to its admissibility. *Id.*

We determine the district court did not abuse its discretion in permitting Detective Tompkins to testify for the purpose of interpreting cell phone records.[3] Rendon's complaint Detective Tompkins did not have up-to-date technical

---

[3] On appeal, Rendon claims the interpretation of the cell phone records was a novel or complex matter and the district court should have applied the test found in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-92 (1993). "[T]rial courts are not required to apply the *Daubert* analysis in considering the admission of expert testimony." *Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 533 (Iowa 1999). We find Rendon did not advocate for the application of the *Daubert* test before the district court, and further find application of the test was unnecessary in this case, as it did not involve a novel or complex matter.

knowledge goes to the weight of his testimony, not its admissibility. Detective Tompkins had sufficient knowledge, skill, experience, and training to interpret the cell phone records and to assist the jury in understanding those records.

## IV. Motion for Judgment of Acquittal

Rendon states the district court should have granted his motion for judgment of acquittal. He claims the State did not present sufficient evidence to corroborate the testimony of the accomplices. Rendon states there is no inculpatory evidence connecting him to the crimes. Our review of a ruling on a motion for judgment of acquittal is for the correction of errors at law. *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010).

Rendon's motion for judgment of acquittal did not specifically raise the issue of whether the testimony of Moore, Thompson, and Jacari was sufficiently corroborated by other evidence. Furthermore, the district court did not rule on whether there was corroboration for the testimony of the accomplices. We conclude Rendon has failed to preserve error because the issue he raises on appeal was not raised in the motion for judgment of acquittal. *See State v. Schertz*, 328 N.W.2d 320, 321 (Iowa 1982).

## V. Ineffective Assistance

Rendon claims he received ineffective assistance of counsel on several grounds. We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A

defendant has the burden to show by a preponderance of the evidence counsel was ineffective. *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

**A.** During the trial, the State presented an exhibit showing a picture from Rendon's Facebook account, which depicted a large amount of cash next to a bottle of liquor, and was posted at 2:23 a.m. UTC on September 25, 2014.[4] Detective Steve Nore testified the picture was posted between 7:23 and 8:23 a.m. local time. On cross-examination, Detective Nore admitted he should have subtracted five hours, rather than added five hours, in determining when 2:23 a.m. UTC occurred in Iowa. He concluded the picture was posted at 9:23 p.m. on September 24, before the robbery took place. The prosecutor conceded the mistake during redirect examination of Detective Nore.

Rendon claims he received ineffective assistance because defense counsel did not object to the picture on the ground of relevancy. While the picture was irrelevant because it was posted before the robbery took place, we determine Rendon cannot show he was prejudiced by defense counsel's failure to object to the picture at the time it was presented by the State. *See Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) ("To prove prejudice, the [defendant] must show that the alleged error actually and substantially disadvantaged him."). The mistake concerning when the picture was posted was thoroughly discussed during the trial.

**B.** Rendon claims he received ineffective assistance because defense counsel did not object to Detective Nore's testimony concerning Rendon's cell phone records on the ground Detective Nore did not have the expertise or

---

[4] UTC stands for Coordinated Universal Time, also known as Greenwich Mean Time.

personal knowledge to testify about the records. Detective Nore testified Rendon was paying for Thompson's cell phone service. The cell phone records showed Rendon and Thompson had frequent communication in the time leading up to the robbery. The morning after the robbery, Rendon discontinued Thompson's cell phone service.

Detective Nore was the principal investigator in the case. He testified he obtained the cell phone records for each of the suspects by subpoena. His testimony was based on his personal examination of the records. Furthermore, Detective Tompkins examined the cell phone records and testified without objection to the frequent calls between Rendon and Thompson. We conclude Rendon has not shown he received ineffective assistance by defense counsel on this ground.

**C.** Rendon claims, "[t]he mistrial issue may not be preserved due to counsel's failure to make a timely objection to the testimony." Rendon states any lack of error preservation is due to ineffective assistance of counsel. He claims during Thompson's testimony the State presented "evidence that went way beyond demonstrating a relationship between Rendon and Thompson." Rendon states defense counsel should have objected to the following testimony:

> Q. What was the plan after the robbery—I mean between you and Joe. What was the next step after this robbery? A. Next step was to purchase drugs and get some money back going.
> Q. So I'm sorry. Say that again. A. And get some money back going.
> Q. So if I understand correctly, it was—you didn't have enough money to get more product; is that fair to say? A. Right.
> Q. So the plan was to commit a robbery to get more money? A. Yes.
> Q. Use the money for the robbery to buy more product? A. Yes.

12

Q. And then sell that? A. Yes.
Q. To get more money? A. Yes.
Q. To do it all over again? A. Yes.

Iowa Rule of Evidence 5.404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under the rule, evidence of prior bad acts "is admissible if it is probative of some fact or element in issue other than the defendant's general criminal disposition." *State v. Wilson*, 878 N.W.2d 203, 211 (Iowa 2016). "If the court determines the evidence is relevant to a legitimate issue in dispute, the court must determine whether the probative value of the other crimes, wrongs, or acts evidence is substantially outweighed by the danger of unfair prejudice to the defendant." *Id.*

The State sought to present evidence Rendon and Thompson were engaged in selling drugs in order to show a motive and plan. Thomson's testimony showed the motive for the robbery was the furtherance of a criminal enterprise in drug dealing. It also showed their plan for the proceeds from the robbery. We determine the evidence was admissible to prove a fact or element other than Rendon's general criminal disposition. *See State v. Crawley*, 633 N.W.2d 802, 807 (Iowa 2001) (finding evidence of drug use was relevant to show motive for forgery). There was clear proof, based on the testimony of Thompson and Moore, Rendon was involved in selling drugs. *See State v. Putnam*, 848 N.W.2d 1, 9 (Iowa 2014) ("There 'must also be clear proof the individual against

whom the evidence is offered committed the bad act or crime.'" (citation omitted)).

We also find the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to Rendon. *See Wilson*, 878 N.W.2d at 211. The evidence of drug dealing was not wholly independent of the offenses for which Rendon was on trial. *See Crawley*, 633 N.W.2d at 808. We determine that even if defense counsel had objected to the evidence of drug dealing, the district court would have denied the objection. "Counsel does not fail to perform an essential duty by failing to raise a meritless objection." *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015).

**D.** On the issue of the motion for judgment of acquittal, Rendon states if we have found there was a failure to preserve error, this failure was due to ineffective assistance of counsel. He claims defense counsel should have claimed the State did not present sufficient evidence to corroborate the testimony of the accomplices. Rendon states there is no inculpatory evidence connecting him to the crimes.

A defendant may not be convicted on the testimony of an accomplice alone. *State v. Douglas*, 675 N.W.2d 567, 568 (Iowa 2004). Iowa Rule of Criminal Procedure 2.21(3) provides:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. Corroboration of the testimony of victims shall not be required.

"Corroborative evidence need not be strong as long as it can fairly be said that it tends to connect the accused with the commission of the crime and supports the credibility of the accomplice." *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010). The testimony of one accomplice may not be used to corroborate the testimony of another accomplice. *Id.*

We find there is sufficient evidence in the record to corroborate the testimony of Rendon's accomplices. Independent evidence showed Rendon drove a maroon SUV. A videotape from a security camera showed a maroon SUV following Lisk's vehicle as Lisk followed the Impala the intruders used to drive away from the robbery. Also, officers saw a maroon SUV within the perimeter they set up in an attempt to catch the intruders, who had fled on foot. The maroon SUV, driven by Rendon, was stopped for speeding and given a warning on eastbound Interstate 80 on September 26, 2014, which corroborates Thomson's testimony Rendon drove him from Des Moines to the Quad Cities on that day. Furthermore, the cell phone records corroborate the relationships between Rendon, Thompson, Benson, Jacari, and Moore, and their locations on the night of the robbery.

We determine Rendon has not shown he received ineffective assistance due to defense counsel's failure to raise the issue of corroboration of the accomplices' testimony in his motion for judgment of acquittal. If the issue had been raised, it would have been denied by the district court.

We affirm Rendon's convictions.

**AFFIRMED.**